THOMAS F. KOEGEL (SBN 125852)
  tkoegel@crowell.com
REBECCA M. SUAREZ (SBN 284853)
  rsuarez@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:  415.986.2827

KIRSTEN NATHANSON (admitted *pro hac vice*)
  knathanson@crowell.com
DAVID Y. CHUNG (admitted *pro hac vice*)
  dchung@crowell.com
ERYN HOWINGTON (admitted *pro hac vice*)
  ehowington@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:   202.624.2500
Facsimile:   202.628.5116

Attorneys for Proposed Intervenor-Defendant
CROPLIFE AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALIANZA NACIONAL DE CAMPESINAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants, <br><br> and <br><br> CROPLIFE AMERICA, <br><br>  Proposed Intervenor-Defendant. | Case No. 4:22-cv-09030-JST <br><br> **CROPLIFE AMERICA'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE** <br><br> Date:      July 13, 2023 <br> Time:     2:00 p.m. <br> Ctrm.:    Courtroom 6, 2nd Floor <br> Judge:    Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

I. Plaintiffs' Arguments Opposing Intervention as of Right Lack Merit. .............................. 2

    A. CropLife Has a Significantly Protectable Interest in This Case. ............................ 2

        1. Intervention Is Appropriate in Both Challenges to Programmatic Procedures and Challenges to Individual Registrations. ............................. 3

        2. This Case Is Distinguishable from the Deadline Suits Plaintiffs Rely On... 6

        3. This Court Should Reject Plaintiffs' Attempts to Resurrect the "Federal Defendant" Rule. ................................................................................ 8

    B. A Ruling In Plaintiffs' Favor Would Impair CropLife's Interests. ......................... 9

II. Plaintiffs' Arguments Opposing Permissive Intervention Lack Merit. ............................ 10

CONCLUSION ................................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Cmty. Action on Toxics v. Council on Envtl. Quality*,
   No. 3:20-cv-05199-RS (N.D. Cal. 2020) .................................................................................. 6

*Animal Legal Def. Fund v. Bernhardt*,
   No. 19-cv-06812-JST, 2020 WL 4188090 (N.D. Cal. May 18, 2020) ...................................... 6

*Cal. by & through Becerra v. U.S. Dep't of the Interior*,
   381 F. Supp. 3d 1153 (N.D. Cal. 2019) .................................................................................... 6

*Center for Biological Diversity v. Salazar*,
   2010 WL 11575277 (N.D. Cal. Mar. 5, 2010) .......................................................................... 5

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................................................... 10

*County of Fresno v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) .................................................................................................... 2

*CropLife Am. v. E.P.A.*,
   329 F.3d 876 (D.C. Cir. 2003) .................................................................................................. 6

*Earth Island Institute v. Wheeler*,
   464 F. Supp. 3d 1138 (N.D. Cal. 2020) .................................................................................... 5

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) .................................................................................................. 6

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002), *overruled in part on other grounds by*
   *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc) .................... 11

*Med. Advocs. For Healthy Air v. EPA*,
   No. CV 11–3515 SI, 2011 WL 4834464 (N.D. Cal Oct. 12, 2011) .......................................... 7

*Nat. Res. Def. Council v. Whitman*,
   No. C 99-03701 WHA, Dkt. No. 18 (N.D. Cal. Dec. 8, 1999) ................................................. 4

*Natural Resources Defense Council v. Whitman*,
   No. 99-03701 WHA, 2001 WL 1221774 (N.D. Cal. Sept. 24, 2001) ....................................... 1

*Our Children's Earth Found. v. EPA*,
   No. C 05-05184 WHA, 2006 WL 1305223 (N.D. Cal. May 11, 2006) .................................... 7

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

CROPLIFE AMERICA'S REPLY IN
SUPPORT OF ITS MOTION TO INTERVENE;
CASE NO. 4:22-CV-09030-JST

*Pesticide Action Network of N. Am. v. EPA*,
   No. 3:08-cv-01814-MHP, Dkt. No. 4, 2008 WL 11404954 (N.D. Cal. July 8,
   2008) ............................................................................................................... 4, 5, 9, 10, 11

*Sierra Club v. EPA*,
   No. 13-cv-2809, 2013 WL 5568253 (N.D. Cal. Oct. 9, 2013) ................................................ 7

*Washington Toxics Coalition v. U.S. Dep't of the Interior*,
   457 F. Supp. 2d 1158 (W.D. Wash. 2006) .............................................................................. 6

*Wilderness Soc'y. v. U.S. Forest Service*,
   630 F.3d 1173 (9th Cir. 2011) ..................................................................................... 1, 2, 8, 9

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................................................................................ 1

Fed. R. Civ. P. 24(a) ......................................................................................................................... 13

Fed. R. Civ. P. 24(a)(2) ................................................................................................................... 2, 9

Fed. R. Civ. P. 24(b) ......................................................................................................................... 13

https://www.epa.gov/pesticide-reevaluation/registration-review-process ......................................... 3

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

CROPLIFE AMERICA'S REPLY IN
SUPPORT OF ITS MOTION TO INTERVENE;
CASE NO. 4:22-CV-09030-JST

# INTRODUCTION

Plaintiffs rightly acknowledge that "this case is about pesticide regulation, and CropLife's members' own pesticide registrations." Pls.' Opp'n at 5 (ECF No. 31). And despite the wide-ranging allegations in Plaintiffs' Complaint, including direct attacks on the soundness of hundreds of EPA pesticide registration decisions, Plaintiffs strain to portray this case as a garden-variety "deadline suit" and argue that CropLife has no protectable interest in "EPA process and procedures (or lack thereof)[.]" *See id.* at 5-8. In so doing, Plaintiffs ignore the Ninth Circuit's history of construing Federal Rule of Civil Procedure 24 liberally in favor of proposed intervenors, *see Wilderness Society. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011), as well as a long line of this Court's orders finding that industry trade associations, like CropLife, have significantly protectable interests supporting intervention in cases involving challenges aimed at programmatic agency rules, as opposed to individual project or product approvals. Moreover, contrary to Plaintiffs' claim that CropLife has sat idle during previous litigation surrounding the EDSP, *see* Pls.' Opp'n at 16-17, this Court in fact granted CropLife intervention in an analogous case[1] alleging EPA's failure to implement the endocrine disruptor screening program.

Tellingly, Plaintiffs do not point to a single instance where a court has denied either CropLife or its members intervention in a case about pesticide registration, whether involving challenges to "agency programmatic procedures" or "direct product challenges." *See id.* at 13. This Court should resist Plaintiffs' invitation to reject past practice and precedent and should instead grant CropLife's intervention motion.[2] As explained more fully below, CropLife has established all of the elements required for either intervention as of right or permissive intervention.

---

[1] *See Nat. Res. Def. Council v. Whitman*, No. C 99-03701, 2001 WL 1221774, at *2 (N.D. Cal. Sept. 24, 2001).

[2] Plaintiff also proposes conditions to apply in the event that the Court grants CropLife's Motion to Intervene. *See* Pls.' Opp'n at 18-20. CropLife does not take issue with the stated conditions.

# ARGUMENT

## I. Plaintiffs' Arguments Opposing Intervention as of Right Lack Merit.

Plaintiffs concede that the first and fourth factors for intervention as of right—that CropLife's Motion was timely and that CropLife's interests may not be adequately represented by existing parties—are not in dispute. *See* Pls.' Opp'n 3-4. Plaintiffs' opposition instead claims this Court should deny intervention because CropLife has no "significantly protectable interest" related to the property or transaction that is the subject of the action and thus, the disposition of this action will not, as a practical matter, impair or impede CropLife's ability to protect that interest. *See id.* In so arguing, Plaintiffs' brief omits any mention of the Ninth Circuit's liberal intervention standard.

In evaluating whether Rule 24(a)(2) has been satisfied, courts in this Circuit follow "'practical and equitable considerations'" and "construe the Rule 'broadly in favor of proposed intervenors'" because "'a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc'y*, 630 F.3d at 1179 (citations omitted). The interest test "is primarily a practical guide to disposing of lawsuits by *involving as many apparently concerned persons as is compatible with efficiency and due process*." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (emphasis added) (internal quotation marks and citation omitted). Of particular relevance here, CropLife's interest "need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted). Rather, CropLife need only establish that its interest is protectable under *some* law and that there is a relationship between the legally protected interest and the claims at issue. *See* Mot. at 6 (citing *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). Applying these standards, CropLife easily satisfies the interest and impairment factors for intervention as of right.

### A. CropLife Has a Significantly Protectable Interest in This Case.

Plaintiffs do not dispute that CropLife's members have "property interests protected by law in the form of their pesticide registrations." Pls.' Opp'n at 4. Plaintiffs also assert that if EPA is ordered to "act[] on endocrine disruption" as a result of this lawsuit, it is likely to do so through

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

CROPLIFE AMERICA'S REPLY IN
SUPPORT OF ITS MOTION TO INTERVENE;
CASE NO. 4:22-CV-09030-JST

the "'registration review' process for pesticides,"[3] *see id.* at 10 (citation omitted), and that the burden of testing in accordance with the EDSP will fall on "registrants, manufacturers, or importers of chemicals for which testing is required." Compl. ¶ 38. Plaintiffs nonetheless oppose CropLife's intervention on three principal grounds: (i) Plaintiffs are not directly challenging individual pesticide registration decisions and are instead challenging EPA's process and procedures; (ii) this case is analogous to "deadline suits" where this Court has denied regulated entities intervention; and (iii) CropLife lacks a protectable interest in EPA's duty to carry out a Congressional directive. Not one of these contentions is valid.

1. <u>Intervention Is Appropriate in Both Challenges to Programmatic Procedures and Challenges to Individual Registrations.</u>

Plaintiffs begin by emphasizing that they are not challenging individual registrations and are merely challenging "EPA process and procedures (or lack thereof)[.]"[4] Pls.' Opp'n at 4-5. In Plaintiffs' view, this Court distinguishes "agency programmatic procedures from direct product challenges for purposes of intervention." *See id.* at 13. This claimed distinction does not withstand scrutiny for several reasons.

*First*, this case is virtually indistinguishable from a prior lawsuit—in which CropLife successfully intervened—alleging that EPA failed to meet its statutory deadline to implement the

---

[3] Plaintiffs appear to fundamentally misunderstand the registration review process, characterizing it as some sort of programmatic action that does not directly involve individual registrations. *See* Pls.' Opp'n at 10. In reality, EPA must periodically review each registered pesticide during the registration review process. *See* https://www.epa.gov/pesticide-reevaluation/registration-review-process (last visited May 18, 2023).

[4] This assertion is at odds with Plaintiffs' allegation that "EPA completed registration for 425 new pesticides *without consideration* of their potential endocrine effects—flouting the whole point of Congress's FQPA mandates[.]" Compl. ¶ 128; *see also id.* ¶ 9 ("EPA continues to approve the use of pesticides in vast quantities without adequately considering their potential to impact endocrine systems, with the associated risks that Congress decades ago commanded the agency to address still going unabated."). Because CropLife members have invested hundreds of millions of dollars and have participated extensively in EPA's administrative processes to obtain and maintain pesticide registrations, it follows then that CropLife has a protectable interest in the legal status and value of its members' registrations and in avoiding any judicial finding by this Court that EPA issued or maintained those registrations in an unlawful manner. *See* Lattimore Decl. ¶¶ 4-5 & 12.

endocrine disruption screening program. *See* Compl. ¶¶ 79-80 (citing *Nat. Res. Def. Council*, 2001 WL 1221774). In that case, NRDC and others, just like Plaintiffs here, sued EPA over its alleged failure to implement the EDSP by August 1999; no individual pesticide registrations were at issue. Contrary to Plaintiffs' claim (Pls.' Opp'n at 17), this Court granted motions to intervene by CropLife as well as numerous other industry associations. *See* Order Granting Motion to Intervene, *Nat. Res. Def. Council v. Whitman*, No. C 99-03701 (N.D. Cal. Dec. 8, 1999), ECF No. 18.[5] This Court should do the same here.

*Second*, in granting CropLife intervention in another case about pesticide registration, this Court recognized that CropLife "has a vested interest in maintaining the current regulatory scheme for the benefit of its members." *Pesticide Action Network of N. Am. v. EPA*, No. 3:08-cv-01814-MHP ("*PANNA*"), 2008 WL 11404954, at *3 (N.D. Cal. July 8, 2008). There, the Court emphasized that the requested declaratory relief "could cause EPA to re-open prior re-registration eligibility decisions and/or *alter its re-registration processes*" and that "*any change in the regulatory scheme* [would] likely lead to large financial consequences for CLA members." *Id.* (emphasis added). While it is true that the validity of four individual pesticide registrations was at issue in that case, *see* Pls.' Opp'n at 11, this Court granted intervention to both the individual registrant and CropLife and, in so doing, it notably distinguished between the registrant's interest in the four challenged pesticide registrations and CropLife's interest in defending against attempts to change the process and procedures for future registrations in ways that would make it more burdensome for CropLife members to bring pesticide products to market. *See PANNA*, 2008 WL11404954 at *3. Here, as in *PANNA*, CropLife has a significantly protectable interest in the registration scheme itself. *See id.*; *see also* Lattimore Decl. ¶¶ 10-12.

The Court's reasoning in *PANNA* underscores the uniqueness of cases implicating the pesticide registration process, and CropLife's significantly protectable interest in the registration scheme distinguishes CropLife's situation here from the cases on which Plaintiffs rely. *See* Pls.'

---

[5] The 1999 order is beyond the scope of ECF/PACER. Attached as Exhibit A is a true and correct copy of the initial pages of the docket confirming that CropLife was allowed to intervene along with other industry associations.

Opp'n at 8. For example, in *Center for Biological Diversity v. Salazar*, the Court noted that the proposed intervenors effectively conceded that they have no interest in underlying agency procedures. *See* No. C 09-5370, 2010 WL 11575277, at *3 (N.D. Cal. Mar. 5, 2010). Similarly, in cases such as *Earth Island Institute v. Wheeler*, as well as cases cited therein that Plaintiffs rely on, *see* Pls.' Opp'n at 8, this Court denied intervention upon finding that the proposed intervenors' "interests would remain the same regardless of the outcome of the litigation, because the plaintiff challenged the agency's procedure and not its substantive decision." 464 F. Supp. 3d 1138, 1146 (N.D. Cal. 2020). Here, by contrast, this Court has previously recognized that CropLife has a protectable interest in maintaining the current regulatory scheme. *See PANNA*, 2008 WL 11404954, at *3. Thus, Plaintiffs' reliance on those cases is unavailing. *See* Pls.' Opp'n at 8.

  *Third*, because CropLife's members hold, or would in the normal course apply for, FIFRA pesticide registrations and licenses, CropLife was a proper party to cases in other courts involving the procedures and requirements applicable to those licenses that did not directly implicate individual pesticide registrations. For instance, CropLife successfully intervened in *Washington Toxics Coalition v. U.S. Department of the Interior*, a case in which the plaintiffs challenged EPA's programmatic "counterpart regulations" that sought to integrate FIFRA and ESA requirements. *See* 457 F. Supp. 2d 1158, 1172 (W.D. Wash. 2006). There, even though no individual registrations were at issue, the Court granted CropLife's intervention motion and allowed CropLife to brief the merits. *See id.* at 1177-78. In another case, the D.C. Circuit found that CropLife clearly had standing to challenge a change to the regulatory process governing pesticide registrations, even though no individual product registrations were at issue. *See CropLife Am. v. EPA*, 329 F.3d 876, 883-84 (D.C. Cir. 2003). Although that case analyzed CropLife's standing to challenge a change in EPA process and procedures, the D.C. Circuit has held that proposed intervenors who satisfy the test for Article III standing automatically satisfy Rule 24's interest test. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

  *Fourth*, outside of the FIFRA context, this Court routinely allows industry associations to intervene in cases where environmental groups have challenged "programmatic" rules, where no

individual project, agency approval, or property interest is at issue. *E.g.*, Order Granting Motion to Intervene at 2, *Alaska Cmty. Action on Toxics v. Council on Env't Quality*, No. 20-cv-05199 (N.D. Cal. Nov. 5, 2020), ECF No. 37 (attached as Ex. B) (challenge to programmatic rules implementing the National Environmental Policy Act); *Animal Legal Def. Fund v. Bernhardt*, No. 19-cv-06812-JST, 2020 WL 4188090, at *2-3 (N.D. Cal. May 18, 2020) (challenge to four programmatic rules implementing the Endangered Species Act); *Cal. by & through Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019) (challenge to repeal of regulations governing the payment of royalties on oil, gas, and coal extracted pursuant to leases of public lands). In each of these cases, as here, the associations successfully intervened to defend programmatic regulations that would govern future, individual agency actions impacting their members. The same outcome is warranted here.

      2. <u>This Case Is Distinguishable from the Deadline Suits Plaintiffs Rely On.</u>

  Plaintiffs' reliance on various "deadline suits"—in which the plaintiffs sought court orders directing federal agencies to comply with a statutory deadline—is misplaced. *See* Pls.' Opp'n at 5-8. For example, in *Medical Advocates*, the plaintiffs challenged EPA's failure to make determinations under the Clean Air Act on whether a particular area had attained federal ambient air quality standards. *See Med. Advocs. for Healthy Air v. EPA*, No. CV 11-3515, 2011 WL 4834464, at *1 (N.D. Cal Oct. 12, 2011). And in *Our Children's Earth Foundation* and *Sierra Club*, the plaintiffs challenged EPA's failure to comply with statutory deadlines for reviewing existing air emission standards for petroleum refineries and existing federal ambient air quality standards for ozone (respectively) for purposes of determining whether any revisions were needed. *See Our Children's Earth Found. v. EPA*, No. C 05-05184, 2006 WL 1305223, at *1 (N.D. Cal. May 11, 2006); *Sierra Club v. EPA*, No. 13-cv-2809, 2013 WL 5568253, at *3 (N.D. Cal. Oct. 9, 2013). In each of these cases, it was speculative whether regulated entities seeking intervention would be impacted at all, because EPA could have complied with any court-ordered deadline and concluded that no further regulatory requirements were necessary. *See Med. Advocs.*, 2011 WL 4834464, at *1 (plaintiffs sought an order "directing the EPA to determine *if* the Valley has attained the 1-hour standard and to respond to plaintiffs' petition" requesting that

EPA determine "whether the Valley had attained the 1-hour standard"); *Our Children's Earth Found.*, 2006 WL 1305223, at *1 (plaintiffs sought an injunction requiring EPA "to issue proposed rules and final rules (*or a finding that none is needed*) within six months") (emphasis added); *Sierra Club*, 2013 WL 5568253, at *1 (plaintiffs sought to require EPA to review ozone criteria every five years for purposes of determining whether any revisions were appropriate).

This case, by contrast, is more than a deadline suit. Plaintiffs are not seeking a mere deadline for EPA to conduct a review or render a decision that may or may not impact CropLife members; rather they ask for "a Court order mandating that EPA implement the EDSP *and test all chemical pesticides for endocrine testing*" by a date certain. *See* Pls.' Opp'n at 16 (emphasis added); *see also* Compl. ¶ 167 (requesting that this Court order "EPA to complete all actions required under the FQPA at issue in this case as soon as reasonably practicable, according to a Court-ordered timeline"). In Plaintiffs' view, EPA would have to mandate additional testing of all chemical pesticides for endocrine effects—testing that Plaintiffs themselves allege must be conducted by "registrants, manufacturers, or importers" of pesticides. *See* Compl. ¶ 38. That would undoubtedly impact CropLife's members, who are already spending hundreds of millions of dollars on obtaining and maintaining pesticide registrations.[6] *See* Lattimore Decl. ¶¶ 4-5, 8.

It speaks volumes that Plaintiffs filed a 54-page complaint full of allegations ranging from broadsides on the overall validity of EPA's pesticide regulatory framework, *e.g.*, Compl. ¶¶ 9-10, 128-30, down to attacks on specific pesticide chemistries and their safety. *See id.* ¶¶ 111-123. Thus, this case can only be interpreted as one that directly implicates CropLife's members' valuable and protectable property interests, and resultantly, CropLife's interest in protecting those interests. Because "there is a relationship between the[se] legally protected interest[s] and the claims at issue" and because CropLife's members "will suffer a practical impairment of [their]

---

[6] Moreover, as explained in the Lattimore Declaration supporting CropLife's Motion, it is difficult to separate process from substance in the context of a case involving pesticide registrations. It takes time to develop and implement "validated methods for conducting testing as well as the proper protocols for interpreting test results, while minimizing duplicative testing." Lattimore Decl. ¶ 11. "Rushing through the process without properly developed methods and protocols risks creating public misperceptions about the chemicals undergoing testing and could result in needless fear and distrust of specific chemistries or pesticides generally." *Id.*

interests as a result of the pending litigation," CropLife satisfies the interests and impairment prongs of the test for intervention as of right. *See Wilderness Soc'y*, 630 F.3d at 1179 (citations omitted).

### 3. This Court Should Reject Plaintiffs' Attempts to Resurrect the "Federal Defendant" Rule.

Plaintiffs' claim that "CropLife has no protectable interest in *EPA's* duty from Congress to develop the EDSP" (Pls.' Opp'n at 13) is reminiscent of the now defunct "Federal Defendant Rule", which Plaintiffs acknowledge has "long been done away with in the Ninth Circuit." *Id.* at 12-13. For decades, the Ninth Circuit had limited regulated entities' intervention as of right during the liability phase of NEPA cases, based on "[t]he rationale . . . that such parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government." *Wilderness Soc'y*, 630 F.3d at 1177 (citation omitted); *see also id.* at 1178 (rejecting prior reasoning that "proposed intervenors lacked the 'direct, significant legally protectable interest' required for intervention of right under Rule 24(a)(2) because in cases 'brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants'") (citations omitted). In abandoning that rationale as "inconsistent with the text of Rule 24(a)(2), which requires only 'an interest relating to the property or transaction that is the subject of the action,'" the Ninth Circuit emphasized that "the 'federal defendant' rule is at odds with the normal standards we apply in all other intervention of right cases [as] further demonstrated by our consistent approval of intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes other than NEPA." *Id.* at 1178-79 (citations omitted).

Under the Ninth Circuit's holding in *Wilderness Society*, which reiterated a liberal approach to intervention, *see id.* at 1179, there is no basis to deny CropLife's intervention in this case on the ground that CropLife lacks a protectable interest in an EPA duty. Here, EPA's "duty" to "implement the EDSP and the endocrine testing it requires," Pls.' Opp'n at 13, transfers directly and immediately to CropLife's members, because the FQPA mandates that EPA "shall

1  issue" orders to registrant, manufacturers, or importers of pesticide chemicals to conduct EDSP

2  testing. *See* Compl. ¶ 38 (quoting 21 U.S.C. § 346a(p)(5)(A)).

### B. A Ruling in Plaintiffs' Favor Would Impair CropLife's Interests.

Upon finding that a proposed intervenor has a significantly protectable interest, as CropLife does in this case, the Ninth Circuit has "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotation marks and citation omitted). And just as this Court recognized in *PANNA*, "it is clear that the disposition of this action may impair or impede [CropLife's] ability to protect their [members'] interest in . . . the registration process." *PANNA*, 2008 WL 11404954 at *3.

Plaintiffs assert that they are not seeking "an order that EPA has violated the FQPA in issuing registrations to CropLife's members," Pls.' Opp'n at 14-15, but the allegations in their complaint show otherwise. *See* Compl. ¶ 128 ("EPA completed registration for 425 new pesticides *without consideration* of their potential endocrine effects—flouting the whole point of Congress's FQPA mandates"). And just a few sentences before that assertion, Plaintiffs' opposition states that their "requested relief is declaratory relief *that EPA has violated and continues to violate the FQPA*[.]" *Id.* at 14 (emphasis added). Because Plaintiffs do not refute that a ruling that pesticide registrations were issued in violation of the FQPA could have severe adverse impacts on the utility and commercial value of CropLife's members' pesticide registrations, CropLife satisfies the impairment factor on that basis alone. *See* Lattimore Decl. ¶¶ 8, 12.

Plaintiffs also claim that CropLife will not be impaired by any changes to the pesticide registration licensing requirements, because they "have not requested such specific relief, and it is not within the scope of this 'unlawful withholding' procedural APA case." Pls.' Opp'n at 15. Plaintiffs, however, seek a court order mandating that EPA "test all pesticide chemicals." *See id.* at 14, 16. As Plaintiffs have alleged, that additional testing will necessarily fall to "registrants, manufacturers, or importers" of pesticide chemicals, *see* Compl. ¶ 38, which will increase the already substantial costs and burdens that CropLife members face in obtaining and maintaining pesticide registrations. *See* Lattimore Decl. ¶ 4. Moreover, EPA's implementation of the

endocrine disruptor screening program is inextricably intertwined with the pesticide registration process, as EPA has historically sought to align EDSP testing with the registration review process for individual pesticides. *See* Compl. ¶ 87. Accordingly, "it is clear that the disposition of this action may impair or impede [CropLife's] ability to protect their [members'] interest in . . . the registration process." *PANNA*, 2008 WL 11404954, at *3.

For these reasons, contrary to Plaintiffs' claims, a ruling in Plaintiffs' favor would as a practical matter impair CropLife's interests.

## II. Plaintiffs' Arguments Opposing Permissive Intervention Lack Merit.

In this Circuit, "all that is necessary for permissive intervention is that [the] intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (citation omitted), *overruled in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). CropLife satisfies that requirement here.

Plaintiffs oppose permissive intervention because CropLife "(1) does not share common questions of law and fact with this action and (2) will serve only to inject irrelevant briefing and undue delay in this case, prejudicing Plaintiffs' and Defendant EPA's rights." Pls.' Opp'n at 16. Neither of these arguments holds up.

Plaintiffs insist that there are no common questions of law and fact between their case and CropLife's defense because they are not seeking to impose additional requirements applicable to pesticide registrants. *See id.* Yet that is exactly what their complaint asks for. Again, Plaintiffs' requested relief—an order mandating that EPA implement the EDSP and test all chemical pesticides—*would* impose additional requirements applicable to pesticide registrants, including CropLife members, because registrants are the entities that must conduct the testing. *See supra* at 7, 9; *see also PANNA*, 2008 WL 11404954, at *4 (holding that permissive intervention was appropriate because, "[a] ruling *on the procedures* by which the EPA makes its re-registration decisions *may have far-reaching implications for all CLA members* who are producers, formulators or distributors of pesticides") (emphasis added).

//

Moreover, Plaintiffs' lengthy Complaint takes aim at the validity of hundreds of pesticide registrations, despite their attempts to characterize this action as a mere deadline suit. In particular, Plaintiffs lodge substantive allegations about whether EPA registered hundreds of pesticides unlawfully and about the safety of specific chemistries and products currently on the market. *E.g.*, Compl. ¶ 110 (chemicals deemed to be possible human endocrine disruptors include "carbaryl, chlorothalonil, cypermethrin, DCPA, dichlobenil, dimethoate, flutolanil, folpet, iprodione, linuron, metalaxyl, metribuzin, myclobutanil, o-phenylphenol, PCNB, propargite, propiconazole, and tebuconazole"); *id.* ¶¶ 112-23 (alleging that the above-referenced pesticides potentially harm humans and wildlife); *id.* ¶ 128 ("EPA completed registration for 425 new pesticides without consideration of their potential endocrine effects—flouting the whole point of Congress's FQPA mandates"); *id.* ¶ 154 ("The requested relief will redress this harm by compelling EPA to implement the EDSP and resume testing of all pesticide chemicals as required by law[.]"); *id.* ¶ 38 ("Per the FQPA, EPA 'shall issue' orders 'to conduct testing in accordance with the [EDSP]' to registrants, manufacturers, or importers of chemicals for which testing is required."). Read together, these allegations can only be construed as calling into question the validity of pesticide registrations themselves and as calling for additional requirements to apply to pesticide registrants. There is little doubt that this case implicates the validity of pesticide registrations and changes to the current pesticide registration framework. Because CropLife members hold many registrations that are the subject of the aforementioned allegations in Plaintiffs' complaint, there are common questions of law and fact suitable for permissive intervention.

Finally, Plaintiffs assert that CropLife's intervention would hamper settlement negotiations already underway between Plaintiffs and EPA. *See* Pls.' Opp'n at 17-18. Plaintiffs, however, do not explain how they might be prejudiced and cite no authority supporting the assertion that prejudice to them would result by allowing an intervening industry association to participate in settlement discussions. On the contrary, because Plaintiffs' action raises questions that are "important . . . to the regulated industry[,] . . . it is important that the industry's voice be heard." *PANNA* 2008, WL 11404954 at *4.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

CROPLIFE AMERICA'S REPLY IN
SUPPORT OF ITS MOTION TO INTERVENE;
CASE NO. 4:22-CV-09030-JST

For these reasons, CropLife has clearly demonstrated that it can satisfy Rule 24(b)'s standard for permissive intervention.

## **CONCLUSION**

This Court should grant CropLife intervention as of right under Rule 24(a), or alternatively, permissive intervention under Rule 24(b).

Dated:  May 19, 2023            CROWELL & MORING LLP

By: */s/ David Y. Chung*
David Y. Chung
Attorneys for Proposed Intervenor-
Defendant CROPLIFE AMERICA